UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| MICHAEL J. MCENROE, | ) |
| :--- | :--- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:19-cv-00742 |
| | ) |
| SITEL OPERATING CORPORATION, | ) |
| GROUPE ACTICALL SAS, and | ) |
| LAURENT UBERTI, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Following his termination, Michael McEnroe brought this action against his former employer Sitel Operating Corporation ("Sitel"), its parent company Groupe Acticall SAS, and one of Sitel's executives, Laurent Uberti, under various state and federal laws, including the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 *et seq.* Before the Court is Uberti's Motion to Dismiss (Doc. No. 29) Count IV of the Amended Complaint, which asserts an FLSA retaliation claim against Uberti individually. This matter has been fully briefed by the parties. (Doc. No. 30, 33, 34.) For the following reasons, Uberti's motion to dismiss will be denied.

**I.  FACTUAL ALLEGATIONS AND BACKGROUND[1]**

In October 2017, McEnroe began working for Sitel as its Chief Human Resources Officer ("Chief HR Officer"), which was the highest-level human resources position in the company. (Compl. ¶¶ 13, 17.) As Chief HR Officer, McEnroe "was responsible for overseeing all human

---

[1] The relevant background and facts necessary to resolve the pending motion to dismiss are drawn only from the Amended Complaint ("Compl.") (Doc. No. 24) and are assumed to be true for purposes of ruling on the motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (noting that "when ruling on a defendant's motion to dismiss, a judge must accept as true all factual allegations contained in the complaint").

resource-related functions within the Company, including but not limited to working with and advising [Sitel's] top-level executives on all manner of policies and procedures, such as compensation plans." (Id. ¶ 17.) Uberti, who was Sitel's President and Chief Operating Officer, also instructed McEnroe to view the company with "fresh eyes" and provide advice about any additional changes that needed to be made. (Compl. ¶¶ 11, 18.) Oddly, however, McEnroe's "duties did not include proposing or advocating for equal pay on behalf of any particular individual employee." (Id. ¶ 17.)

On or around February 1, 2018, McEnroe met with Uberti to discuss, among other things, his concern about gender pay equity at the company. (Id. ¶ 25.) Specifically, McEnroe expressed his concern that Sitel was paying its Chief Financial Officer, Elisabeth Destailleur, significantly less than the company's male executives. (Id. ¶¶ 21, 28.) McEnroe also told "Uberti that he believed Destailleur should be paid commensurate with her male colleagues, as it was not only the right thing to do but failure . . . to pay her equally would be in violation of the law." (Id. ¶ 28.) Uberti responded that Destailleur's compensation was "taken care of in other ways." (Id.)

On March 5, 2018, Uberti told McEnroe that he was not "a good fit" for the company based, at least in part, on "difficult conversations" they previously had. (Id. ¶¶ 39–40.) Two days later, on March 7, 2018, McEnroe received an employment termination letter. (Id. ¶ 41.)

Based on the circumstances leading to his termination, McEnroe brought a claim against Uberti for retaliation in violation of the FLSA (Count IV). Uberti now moves to dismiss Count IV under Federal Rule of Civil Procedure 12(b)(6), arguing that the Complaint fails to state a prima facie case of retaliation because it does not allege that McEnroe engaged in protected activity.

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s]

2

all reasonable inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). Plaintiff need only provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47 (1957) (internal quotation marks omitted), and the Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232 (1974)). Nevertheless, the allegations "must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), and must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). In short, a complaint must state a plausible claim for relief to survive a motion to dismiss. Id. at 679; Twombly, 550 U.S. at 556.

### III. ANALYSIS

The FLSA's antiretaliation provision prohibits an employer from discharging or discriminating against an employee who engages in specified protected activity. 29 U.S.C. § 215(a)(3). Based on this provision, the Sixth Circuit has held that:

> To establish a prima facie case of retaliation, an employee must prove that (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to [him]; and (4) there was a causal connection between the protected activity and the adverse employment action.

Adair v. Charter Cnty. of Wayne, 452 F.3d 482, 489 (6th Cir. 2006) (citing Williams v. Gen. Motors Corp., 187 F.3d 553, 568 (6th Cir. 1999)). The sole issue before the Court is whether the Complaint satisfies the first prong by plausibly alleging that McEnroe engaged in a FLSA-protected activity.

As relevant to the instant motion, an employee engages in protected activity when he "file[s] any complaint or institute[s] or cause[s] to be instituted any proceeding under or related to" the FLSA.² 29 U.S.C. § 215(a)(3). "A complaint has been 'filed' when a reasonable, objective person would understand the employee to have put the employer on notice that [he] is asserting statutory rights under the FLSA." McKinnon v. L-3 Comms. Corp., 814 F. App'x 35, 42 (6th Cir. 2020) (citing Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 14 (2011)). Although making an informal, oral complaint can constitute protected activity under the FLSA, Moore v. Freeman, 355 F.3d 558, 562 (6th Cir. 2004); Kasten at 14, some courts have held that "expressions of concern or discomfort or frustration" are insufficient, see Robinson v. Wal-Mart Stores, Inc., 341 F. Supp. 2d 759, 763 (W.D. Mich. 2004).

Here, the Amended Complaint alleges that McEnroe advised Uberti that it "would be [a] violation of the law" to continue paying Destailleur significantly less than her male counterparts and that fixing her compensation was the "right thing to do." (Compl. ¶ 28.) Construing the Complaint in the light most favorable to McEnroe, the Court can reasonably infer that his informal, internal complaint could constitute protected activity under § 215(a)(3), particularly because he referred to a violation of law based on unequal pay.³ See EEOC v. Romeo Cmty. Schs., 976 F.2d

---

² The Complaint does not allege that McEnroe engaged in the other types of protected activities listed in 29 U.S.C. § 215(a)(3), including instituting a proceeding or causing a proceeding under the FLSA, testifying in a proceeding under the FLSA, or serving or preparing to serve on an industry committee. See Kasten v. Saint-Gobain Performance Plastics Corp., 563 U.S. 1, 20 (2011) (Scalia, J., dissenting).

³ Uberti notes that although the Amended Complaint asserts a second act of allegedly protected conduct—i.e. McEnroe's report about certain hourly employees not being paid some wages when due (Compl. ¶¶ 31, 63)—it cannot support a claim against him because McEnroe made that complaint solely to a subordinate employee. (Doc. No. 30 at 5–6.) This argument is deemed unopposed under this Court's Local Rules and Sixth Circuit case law because McEnroe never filed a response in opposition. See L.R. 7.01(a)(3); Humphrey v. U.S. Attorney Gen.'s Office, 279 F.

4

985, 989–90 (6th Cir. 1992) (finding protected activity where employee told school district that "she believed they were 'breaking some sort of law' by paying her lower wages than previously paid to male temporary custodians"); see also Hagan, 529 F.3d at 626 (collecting cases).

The Court's inquiry does not end there, however, because the Sixth Circuit has been "especially attentive to the contours of protected activity when," as is the case here, "an employee has been 'specifically tasked with personnel or human resources duties.'" McKinnon, 814 F. App'x at 42–43 (quoting Pettit v. Steppingstone, Ctr. for the Potentially Gifted, 429 F. App'x 524, 530 (6th Cir. 2011)). Applying the so-called manager rule, "courts generally require that an employee with these duties somehow 'step outside the role' or otherwise make clear to the employer that [he] was taking a position adverse to the employer" in order for the employee's activity to be protected under 29 U.S.C. § 215(a)(3)." Id. (quoting Hagan v. Echostar Satellite, LLC, 529 F.3d 617, 628 (5th Cir. 2008) (internal quotation marks omitted)). Thus, "[t]o the degree that [McEnroe's] FLSA complaints were made in the course of performance of human resource job duties assigned to [him] and undertaken for the purpose of protecting the interests of [his] employer, they do not constitute protected activity under § 215(a)(3)." Pettit, 429 F. App'x at 530.

Given these standards, Uberti's motion certainly presents a close question. As Chief HR Officer, McEnroe was responsible for overseeing all human resource-related functions of Sitel and "advising" its high-level executives (like Uberti) about its policies and procedures. However, because the Court is applying the manager rule on a motion to dismiss, and not on a motion for summary judgment like in McKinnon and Pettit, the Court must accept as true the peculiar *allegations* that McEnroe's job "duties did not include proposing or advocating for equal pay on

---

App'x 328, 331 (6th Cir. 2008) (holding that when plaintiff fails to respond to an argument in defendant's motion to dismiss, any opposition is waived).

behalf of any particular individual employee," and that when he complained to Uberti he "was advocating for Destailleur to be paid commensurate with her male counterparts." (Compl. ¶¶ 17, 28.) To be sure, Uberti may ultimately prevail on this issue on summary judgment or at trial (where he will have the benefit of discovery and a more substantial factual record) by showing, what is true and firmly established in the HR world, that McEnroe's complaint was within the scope of his job duties as Chief HR Officer, nonadversarial to Sitel's interests, or merely an expression of concern. But taking the allegations in the Amended Complaint as true, and drawing all reasonable inferences in McEnroe's favor, the Court finds that McEnroe adequately alleges that he engaged in FLSA-protected activity when he told Uberti that Destailleur was receiving unequal pay in violation of the law.

**IV.     CONCLUSION**

For the foregoing reasons, Uberti's Motion to Dismiss (Doc. No. 29) will be denied.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE